**[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 651.]**

MELLON BANK, NA, TRUSTEE, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Mellon Bank, N.A. v. Franklin Cty. Bd. of Revision*, 1996-Ohio-229.]

*Taxation—Real property valuation—Board of revision's dismissal of complaint seeking reduction in taxable value of property reasonable and lawful when complaint violates R.C. 5715.19(A)(2).*

(No. 95-80—Submitted October 26, 1995—Decided March 1, 1996.)

APPEAL from the Board of Tax Appeals, No. 93-B-1157.

————————

{¶ 1} On March 31, 1992, appellant, Mellon Bank, NA, Trustee ("Mellon Bank"), filed a complaint for tax year 1991 with the Franklin County Board of Revision ("BOR") seeking a reduction in the taxable value of two parcels of property (Nos. 610-199537 and 610-201408) located in the Columbus-Worthington City School District. The property, known as Three Crosswoods Center, is a low-rise office building consisting of approximately 115,238 leasable square feet of office space, situated on 6.028 acres of land.

{¶ 2} Mellon Bank previously had filed complaints with the BOR regarding the same property for tax years 1989 and 1990. For tax year 1989, the BOR adopted a stipulated fair market value for the property of $11,100,000. For tax year 1990, the BOR adopted the same value for the property as it had for 1989. No appeal was taken from the 1990 BOR decision.

{¶ 3} Mellon Bank's complaint for tax year 1991 alleged that the fair market value of the property was $9,200,000. The Worthington City School District Board of Education ("Worthington") filed a countercomplaint alleging that the fair market value of the property should remain at the assessed value of $11,100,000.

**{¶ 4}** For Franklin County, tax year 1990 was the first year of the triennial interim period. At the BOR, Worthington contended that the complaint filed by Mellon Bank for tax year 1991 violated R.C. 5715.19(A)(2), because it was the second complaint filed in the interim period, and consequently, should be dismissed. The BOR dismissed Mellon's complaint, finding that it violated R.C. 5715.19 (A)(2).

**{¶ 5}** The BOR found that, during all the relevant time periods, the property in question was fully occupied by Nationwide Mutual Insurance Company ("Nationwide"). On or about July 31, 1991, Nationwide and Mellon Bank entered into an amendment of their lease which extended the term for forty-six months, thereby changing the lease expiration date from September 30, 1992 to July 31,1996. In addition the base rental under the lease was reduced from $12.75 per square foot to $6.75 per square foot for the period August 1, 1991 to July 31, 1992; then increased to $8.75 per square foot for the period August 1, 1991 to July 31, 1995; and finally, increased to $10.75 per square foot for the period August 1, 1995 to July 31, 1996.

**{¶ 6}** The Board of Tax Appeals ("BTA") affirmed the BOR's dismissal of Mellon Bank's complaint.

**{¶ 7}** This cause is now before the court upon an appeal as of right.

_____

*Wayne E. Petkovic*, for appellant.

*Michael Miller*, Franklin County Prosecuting Attorney, and *James R. Gorry*, Assistant County Prosecuting Attorney, for appellees Franklin County Auditor and Franklin County Board of Revision.

*Baker & Hostetler* and *George H. Boerger*, for appellee Worthington City School District Board of Education.

_____

***Per Curiam.***

**{¶ 8}** R.C. 5715.19(A)(2), provides:

"As used in division (A)(2) of this section, 'interim period' means, for each county, the tax year to which section 5715.24 of the Revised Code applies and each subsequent tax year until the tax year in which that section applies again.

"No person, board, or officer shall file a complaint against the valuation or assessment of any parcel that appears on the tax list if it filed a complaint against the valuation or assessment of that parcel for any prior tax year in the same interim period, unless the person, board, or officer alleges that the valuation or assessment should be changed due to one or more of the following circumstances that occurred after the tax lien date for the tax year for which the prior complaint was filed and that the circumstances were not taken into consideration with respect to the prior complaint:

"(a) The property was sold in an arm's length transaction, as described in section 5713.03 of the Revised Code;

"(b) The property lost value due to some casualty;

"(c) Substantial improvement was added to the property;

"(d*) An increase or decrease of at least fifteen percent in the property's occupancy has had a substantial economic impact on the property."* (Emphasis added.)

**{¶ 9}** It is undisputed that, by filing for both tax years 1990 and 1991, Mellon Bank filed two complaints in the same interim period. Mellon Bank contends that R.C. 5715.19(A)(2)(d) applies to this case because the lease amendment that it entered into with Nationwide created a new "occupancy," and the lease rental received under the amended lease will result in a reduction in rental income of more than fifteen percent. We disagree.

**{¶ 10}** The sole occupant of the entire property, both before and after the amendment, was Nationwide. The only changes that occurred as a result of the

amendment were an extension of the term of the lease and a reduction in the rental payments made to Mellon. Nevertheless, Mellon Bank contends that "the execution of a new lease must necessarily involve the creation of a new tenancy and, concomitantly, a new occupancy."

**{¶ 11}** A reading of R.C. 5715.19(A)(2)(d) shows that there are two elements which must be satisfied for it to be applicable. First, there must have been "an increase or decrease of at least fifteen percent in the *property's occupancy*," and second, that increase or decrease in the property's occupancy must have "had a substantial economic impact on the *property*." (Emphasis added.) Although the term "occupancy" is used numerous times throughout the Revised Code, it is only defined in R.C. 5722.01(F) which states:

"'Occupancy'" means the actual, continuous, and exclusive use and possession of a parcel by a person having a lawful right to such use and possession."

**{¶ 12}** The statutory definition of "occupancy" set forth in R. C. 5722.01(F) comports with that found in Black's Law Dictionary (6 Ed. 1990) 1078, which states that "occupancy" is:

"Taking possession of property and use of the same; said *e.g.* of a tenant's use of leased premises. Period during which person owns, rents, and otherwise occupies real property or premises. ***"

**{¶ 13}** The relevant criteria used in the above definitions of "occupancy" are "use" and "possession." For leased property, an increase or decrease in occupancy is measured by how much of the property is used and possessed by the tenants. For example, if one tenant possesses the entire property and later the entire property is occupied by five tenants, the occupancy of the property has not increased or decreased, only the number of occupants has changed. Furthermore, the rent received for a property does not measure the amount of use and possession of the property.

**{¶ 14}** In this case the amendment of the lease did not increase or decrease the amount of square footage occupied by Nationwide. Therefore, there was no change in the property's occupancy and R.C. 5715.19(A)(2)(d) was not applicable to Mellon Bank's second complaint filed in the same interim period.

**{¶ 15}** We affirm the decision of the BTA, dismissing the complaint, as being reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____